IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BMO CAPITAL MARKETS CORP. f/k/a HARRIS NESBITT CORP., <br><br> Plaintiff, <br><br> v. <br><br> MCKINLEY MEDICAL LLC <br><br> Defendant. | No. 06 C 6071 <br><br> Judge Der-Yeghiayan <br> Magistrate Judge Schenkier |

**BMO CAPITAL MARKET CORP.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, BMO Capital Markets Corp. f/k/a Harris Nesbitt Corp. ("*BMO*"), by its attorneys, hereby submits it Reply in Support of Its Motion for Summary Judgment against Defendant McKinley Medical LLC ("*McKinley*").

### I. INTRODUCTION

BMO's initial brief, working off a straightforward factual record, showed that the Engagement Letter at issue was negotiated by sophisticated parties, contained a clear, specific clause covering precisely McKinley's merger transaction with Moog, and that McKinley improperly refused to pay as it had agreed. The testimony and documents in the record are consistent, and the case law on point is in agreement that McKinley breached the parties' contract.

McKinley's burden in responding to BMO's summary judgment motion is well-established: McKinley must offer specific, credible facts, based on admissible evidence, from which a reasonable jury could find that McKinley did not breach its contract with BMO. These facts must be from the record and not based on unreasonable inferences. McKinley has failed to meet this burden in its responsive brief. Specifically, McKinley has offered a factual recitation

that is based upon (literally) nothing more than the self-serving and conclusory testimony of one person, which testimony is not only directly contradicted by all of the documentary evidence in the record, but also defies even the loosest definition of common sense and reason. In short, McKinley asks this Court to believe a story both unsupported by the record and unbelievable on its face to any reasonable jury: that BMO, after negotiating a contract by which a merger with Moog was carved out for a specific fee, and after working for months to market and sell McKinley or its product lines, suddenly did a U-turn and refused to sell those same product lines, and, simultaneously, willingly waived its right to written termination of its contract, and accepted an oral termination (or modification) of the contract whereby it agreed to continue working for McKinley – but not on the Moog deal – and thereby waived payment as expressly detailed in the contract. To call this story nonsensical is to be charitable.

Further, McKinley's responsive brief not only presents a hodge-podge of conclusory allegations and untenable and unreasonable inferences from those conclusions, but also throws in a healthy dose of flawed legal reasoning for good measure. For example, McKinley attempts to argue that the Engagement Letter contains two ambiguous words, but merely cries "ambiguous!" without offering a viable alternative definition to those words than their plain, common definitions. Illinois law is clear that, absent such an ambiguity, *i.e.* unless it is shown that at least two definitions make sense in a contract, a contract must be enforced by its terms, and summary judgment must be granted. McKinley repeats this mistake throughout its responsive brief, offering labels like "waiver" and "breach," without explaining, from the factual record and with legal precedent, why those labels apply to the specific facts of this case. This does not meet McKinley's burden, and is insufficient to prevent summary judgment.

In sum, the undisputed facts of this case, and the many on-point cases discussing similar factual scenarios, mandate that summary judgment be granted in favor of BMO and against McKinley.

## II.  STATEMENT OF FACTS

BMO has contemporaneously submitted a Reply to McKinley's Statement of Supplemental Facts pursuant to Local Rule 56.1(a). In this Reply Brief, each citation to BMO's Factual Reply will be noted as "Rule 56.1 Reply, ¶___." Citations to BMO's previously submitted Local Rule 56.1 Statement of Facts for which there is no genuine issue will be remain as "Rule 56.1 Stmt, ¶ ___."

## III.  LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and affidavits which demonstrate that there is no genuine issue of material fact. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). Then, the burden shifts to the non-movant, who must "set forth specific facts showing that there is a genuine issue for trial" and "must do more . . . than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Id.* "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute," and a factual dispute is "genuine" only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

"Although the non-movant is entitled in a motion for summary judgment to have all reasonable inference drawn in its favor, the court is not required to draw unreasonable inferences." *St. Louis North Joint Venture v. P&L Ent., Inc.*, 116 F.3d 262, 265 n.2 (7th Cir. 1997). Further, the Seventh Circuit has repeatedly stated that it, and this Court, "are 'not required to draw every conceivable inference from the record' and 'mere speculation or conjecture' will not defeat a summary judgment motion." *Continental Casualty Co. v. Northwestern Mut. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). In this regard, "[c]onclusory

allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

### IV. LAW AND ARGUMENT

BMO's Motion for Summary Judgment concerns a single claim for breach of contract. As noted above, in order to rebut BMO's Motion for Summary Judgment, McKinley bears the burden of putting forth specific facts from which a jury could find in McKinley's favor. In its Response Brief, McKinley has utterly failed to meet this burden.

As discussed in BMO's supporting Memorandum of Law, when analyzing summary judgment as to a breach of contract claim, the role of this Court is to determine the intent of the parties to the contract, and, in this regard, Illinois strictly follows the "four-corners" rule, which mandates that, as to a contract with a full integration clause (like the Engagement Letter), the intent of the parties is to be determined <u>solely from the language of the contract itself</u>. *See Air Safety, Inc. v. Teacher Realty Corp.*, 185 Ill.2d 457, 462-63, 706 N.E.2d 882, 884 (1999). Thus, when "the language of a contract unambiguously provides an answer to the question at hand, the inquiry is over." *See Grub & Ellis Co. v. Bradley Real Estate Trust*, 909 F.2d 1050, 1055 (7th Cir. 1990).

In its Memorandum BMO demonstrated from facts in the record that: (a) the Engagement Letter herein is plainly unambiguous, because its terms are clear and complete and its meanings are obvious; (b) the Merger between McKinley and Moog qualified as a "Possible Transaction" under the Engagement Letter, and (c) McKinley breached the Engagement Letter by failing to pay a Success Fee as specifically carved-out by ¶4 of the Engagement Letter. *See* Memo, pp. 2-6. Accordingly, the burden has shifted to McKinley to put forth specific facts showing that McKinley could prevail at trial.

McKinley has failed to meet its burden in response. Rather, McKinley has leapt into the middle of a confused analysis that presumes many issues for which McKinley has provided no admissible support, but rather inadmissible evidence, self-serving conclusions which are

contradicted by not only every other fact in evidence, but also any reasonable inference to be drawn from those facts, and misstatements about case law. McKinley's argument is unsupported by the law, and unsupported by the facts. BMO will address each of McKinley's arguments in turn.

A.  **McKinley Has Not Shown That the Engagement Letter is "Facially Ambiguous"**

McKinley's first argument is that the Engagement Letter is ambiguous, and thus the intent of the parties must be gleaned from parol evidence. *See* Resp, p. 5. McKinley's argument here is not at all clear, because while McKinley makes the grandiose conclusory statement that "the Engagement Letter indicates that BMO would earn a Success Fee for the sale of McKinley's entire company and, at best for Plaintiff, is ambiguous as to the sale of McKinley's parts," *see* Resp, §A, McKinley does not explain what this means. Rather, McKinley merely argues that two words found in the Engagement Letter's definition of "Possible Transaction" – "affiliate" and "substantial" – are ambiguous. *See* Resp, pp. 5-8. McKinley's argument in this regard is flawed for many reasons.

1.  **McKinley Has Not Put Forth a Reasonable Alternative Meaning to the Allegedly "Ambiguous" Words**

Most fundamentally, McKinley's argument lays bare its deep misunderstanding of the meaning of the concept of contractual "ambiguity" and its role in contract interpretation upon summary judgment. A contract term is ambiguous for purposes of contractual analysis <u>only if</u> it can be reasonably interpreted in more than one way due to indefiniteness of language or due to it having a double or multiple meaning, and even then not if the Court can ascertain its meaning from context and the general contract language. *See William Blair and Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 334, 830 N.E.2d 760, 770-71 (1st Dist. 2005).

As a result, "[a]ny ambiguity claimed has to be asserted reasonably and plausibly. The interpretation of the party contending for ambiguity needs to be equally plausible to the construction of the party arguing a contract is unambiguous." *Paul B. Episcope, Ltd. v. Law*

5

*Offices of Campbell and Di Vincenzo*, 373 Ill. App. 3d 384, 391, 869 N.E.2d 784, 790 (1st Dist. 2007); *see also Dodge v. Allstate Ins. Co.*, 89 Ill. App. 3d 405, 233 N.E.2d 100, 102 (1st Dist. 1967) (contractual language "is not ambiguous because a word or phrase isolated from the context of the whole is susceptible of more than one meaning, or because in context it is susceptible of one reasonable and one unreasonable meaning"); *Monday v. Ace Home Improvement Services, Inc.*, 248 Ill. App. 3d 481, 484, 618 N.E.2d 563, 565 (1st Dist. 1993) (affirming summary judgment and finding respondent's "interpretation of the contractual language to be unreasonable" so that there was no ambiguity).

In its responsive brief, McKinley fatally offers no reasonable alternative interpretation of the allegedly ambiguous words; it merely isolates the words out of context, cries "ambiguous!" and says no more. *See* Resp, pp. 5-8. This is not enough to defeat summary judgment, for not only must contract language be interpreted in context, it is not deemed "ambiguous" unless an <u>equally plausible alternative meaning is put forth by the party claiming ambiguity</u>. *See Dodge,* 89 Ill. App. 3d 405, 233 N.E.2d at 102; *Paul B. Episcope, Ltd.*, 373 Ill. App. 3d at 391, 869 N.E.2d at 790. This rule obviously makes sense, as a great many words in the English language have multiple meanings, and different dictionaries offer different definitions for the same word. Anyone can look in a dictionary and say "there is more than one definition listed for 'substantial!'" The law is smarter than that, and for this very reason directs the courts to consider what a word means in the context of the overall contract. If it did not, every word in every written document would be "ambiguous," and thus would render uncertain every contract ever written. McKinley's argument of "ambiguity" thus fails.

    2.    **The Terms "Subsantial" and "Affiliate" Are Not Ambiguous**

Even more basically, the terms "substantial" and "affiliate" are hardly ambiguous. "Substantial" is an everyday word, used all the time in the law, by this Court, and by courts all over the country. *See, e.g., McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998) (holding that the phrase "material and substantial duties" in contract was not ambiguous,

6

but rather clear when read in context of entire contract); *Automed Tech, Inc. v. Microfil, LLC*, No. 04 C 5596, 2005 WL 2861043, at *5-6 (N.D. Ill. Oct. 26, 2005) (J. Der-Yeghiayan) ("Accordingly, the misappropriation of confidential information will cause injury to the party that holds **substantial** value in that information's confidentiality." "Accordingly, the only evidence of the "Breed System" is the testimony of Gerold, an individual with a **substantial** interest in the matter.") (bold added) (a copy is attached hereto as Exhibit A).

Further, the case relied upon exclusively by McKinley to argue the ambiguity of "substantial," *see* Resp, p. 7, is not about the word "substantial, but rather the phrase "substantive discussions." *See William Blair and Co., LLC*., 358 Ill. App. 3d at 335, 830 N.E.2d at 770. Thus, McKinley's statement that the court in *William Blair* discussed both "substantive" and "substantial," and "found that the term 'substantive' or 'substantial' is imprecise" is absolutely false. *See* Resp, p. 7. That McKinley would misstate the holding of that case so blatantly speaks to the fallacy of McKinley's argument.[1]

As to "affiliate," it is unclear why McKinley spends so much time disputing this word, as the Merger was between McKinley and Moog directly. *See* Rule 56.1 Stmt, ¶50, Ex. 19. Thus, the ambiguity (or non-ambiguity) of "affiliate" is irrelevant. However, even if it were not, in the context of the Engagement Letter, the meaning of the term "affiliate" is obvious. *See, e.g., Chillmark Partners, LLC v. MTS, Inc*., 02 C 5339, 2003 WL 1964408, at *3 (N.D. Ill. April 25, 2003) (holding that in agreement between financial advisor and client and clients' "subsidiaries and affiliates," fact that "affiliates" were not listed and term was not defined was irrelevant because, in the context of the contract, the term "affiliate" was not ambiguous) (a copy is attached hereto as Exhibit B).

---

[1] Further, it is ironic that McKinley should claim, on pages 6-7 of its Response, that an everyday word like "substantial" is ambiguous, but then, on page 10 of that same Response, blithely state that BMO did not have "substantial discussions" with Moog.

### 3. The Ambiguity of "Substantial" and "Affiliate" is Irrelevant as to the Transaction Which Actually Occurred Between McKinley and Moog

McKinley does not successfully rebut, with admissible facts from the record, BMO's argument that, under the express, bargained-for terms of the Engagement Letter, any merger between McKinley and Moog qualifies as a "Possible Transaction." *See* Resp, pp. 5-6. This is important because the word "substantial" (which is used to modify "portion of stock or assets"), and the term "affiliate" would only apply to a deal between one of McKinley's affiliated companies and a buyer. This is not what happened in this case; what happened here was a Merger between McKinley and Moog. *See* Rule 56.1 Stmt, ¶50. In other words, a merger between McKinley and Moog is described by language in the Engagement Letter which does not use the terms "substantial" or "affiliate." Thus, McKinley's "ambiguity" argument is irrelevant, even if true (which it is not).[2]

### 4. The Subjective Interpretations of the Parties' Employees are Irrelevant

The second argument McKinley makes in an effort to show ambiguity references deposition testimony by BMO employees about their opinions of legal terms and phrases in the Engagement Letter. *See* Response, pp. 7-8. However, it is basic, hornbook law that, when interpreting a contract, "the subjective intentions of the parties are not relevant." *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d 724, 727, 856 N.E.2d 24, 27 (2d Dist. 2006). *See also Perry v. Community Action Services*, 82 F. Supp. 2d 892, 896-97 (N.D. Ill. 2000) (holding that because contract was unambiguous, "deposition testimony and other parol evidence" offered

---

[2] In addition, even assuming for the sake of argument that the terms at issue are ambiguous, McKinley's argument that the Engagement Letter should be construed against BMO, *see* Resp, p. 8, is simply wrong because it is undisputed that McKinley's counsel reviewed and approved the Engagement Letter. *See* Rule 56.1 Stmt, ¶11. In this situation, "[t]he principle that ambiguity should be construed against the drafter does not control [when] we deal with a negotiated contract between sophisticated commercial clients 'advised by counsel and having equal bargaining power.'" *Dawn Equip. Co. v. Micro-Trak Sys, Inc.*, 186 F.3d 981, 989 n.3 (7th Cir. 1999).

8

by the parties as to what they thought contract meant is "irrelevant and not considered herein"). As a matter of law, what an employee of McKinley or BMO thinks about the meaning of a phrase in the Engagement Letter is totally irrelevant to this Court's contractual analysis. *See William Blair and Co., LLC*, 358 Ill. App. 3d at 335, 830 N.E.2d at 770 (analyzing contract objectively despite the parties' subjective belief as to the meaning and ambiguity of contract language).

B.   **McKinley Improperly Raises a Number of Affirmative Defenses for the First Time In Its Response**

In addition to its ambiguity argument, McKinley raises a number of affirmative defenses improperly for the first time in its Response to BMO's Motion for Summary Judgment in an attempt to construct an alternative "intent" behind the Engagement Letter, and to introduce unsupported evidence of the parties' later actions: (a) that the Engagement Letter is a "procuring clause" contract; (b) waiver; (c) modification; and (d) preemptory breach. *See* Resp, pp. 9-15. These are all affirmative defenses, required to be pleaded in McKinley's Answer, not in a responsive brief to a summary judgment motion. *See* Fed. R. Civ. P. 8(c); *Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir. 1981). McKinley's failure to raise them in its Answer, is grounds for striking them from McKinley's responsive brief. *See id.*

Further, even if these theories are not considered affirmative defenses, this Court should disregard them as being improperly raised for the first time in response to a Motion for Summary Judgment. *See Washington v. Ameriquest Mort. Co.*, No. 05 C 1007, 2006 WL 1980201, at *6 (N.D. Ill. July 11, 2006) ("Parties may not raise new theories in responsive briefs, and courts will strike such arguments."); *Rosenbach v. Nordstrom*, 98 C 0726, 2001 WL 199795, at *4 (N.D. Ill. Feb. 22, 2001) (noting that "courts have consistently refused to consider . . . new arguments" which are raised "for the first time in response to a summary judgment motion") (copies of these cases are attached hereto as Exhibits C and D, respectively).

1. **The Parol Evidence in the Record Does Not Support McKinley's Arguments**

McKinley's response brief and statement of additional facts are designed to obviate the "four-corners" rule of contract interpretation, so as to introduce McKinley's "story," which is constructed of literally nothing other than fragments of testimony from its Chief Financial Officer, and is contradicted by all other testimony in the record, as all well as all documents in the record, and any reasonable inference to be drawn from that evidence. *See* Rule 56.1 Reply, ¶¶22-32. As noted above, there is no reason for this Court to even consider this parol evidence because the intent of the parties is clear from the face of the Engagement Letter, and the transaction between McKinley and Moog is covered by a very specific clause of the Engagement Letter. However, even if parol evidence were examined, McKinley still fails to meet it burden on summary judgment to show non-conclusory facts from which a jury could find in its favor.

   a. **The Engagement Letter is Not a "Procuring Clause" Contract**

McKinley argues that the Engagement Letter is a "procuring clause" contract. *See* Resp, p. 9. This is obviously not true, as the unambiguous terms of the Engagement Letter tie BMO's compensation directly to McKinley's consummation of a "Possible Transaction," and such a transaction with Moog is specifically covered by the Engagement Letter: a "Success Fee" is "payable in respect of any Possible Transaction that is consummated and payable on the closing thereof" and "the case that the Possible Transaction involves one of the parties known to us and to you as Smiths Medical, DJ Orthopedics or Moog, Inc.; then such Success Fee shall not be less than $650,000." *See* Rule 56.1 Stmt, ¶¶14, 15. Payment to BMO is not tied to BMO itself "closing" a transaction, no matter how fervently McKinley wishes this were true.

As more fully discussed in BMO's previous Memorandum of Law, the case of *Grub & Ellis Co. v. Bradley Real Estate Trust*, 909 F.2d 1050 (7th Cir. 1990) is on point in this regard. In that case, the letter agreement stated that "Commission on sales will be paid to Grub & Ellis only upon consummation of a sale for which a contract has been entered into (a) during the term of agency." *See id.*, at 1055. The Seventh Circuit held that the contract at issue "unambiguously

provides for payment of a commission to Grub & Ellis upon sale of the building, <u>without regard to Grub & Ellis's role in the sale.</u>" *See id.*, p. 1053, 1055 (emphasis added).

Further, therein the Seventh Circuit expressly rejected the argument made by McKinley on pp. 9-10 of its Response, that to earn a commission in every case, regardless of what the contract actually says, a broker must be the "procuring cause" of the transaction:

> [W]hen an agency agreement expressly provides for the payment of a commission upon sale without regard to the agent's role in the transaction, the agent's failure to procure the sale is irrelevant. Bradley makes much of the fact that Grubb & Ellis played virtually no role in the sale of the building to the Art Institute and cites a number of cases suggesting that a real estate broker must be responsible for the sale in order to collect the commission. (citations omitted). But this circuit has already upheld a decision under Illinois law enforcing the terms of a sales agreement that specifically provided for the payment of a commission, without regard to responsibility . . . '[which stated that the 'procuring clause' principal] obviously has no relevance when the sale does fall within the literal terms of the broker's contract, and Illinois courts enforce the terms of the contract regardless of whether the broker's acts procured the sale or not.'

*See id, pp.* 1055-56. McKinley's argument fails under Illinois law, and must be rejected.

### b.     The Engagement Letter was Not Modified.

McKinley also argues that the Engagement Letter was orally modified by the parties. *See* Resp, pp. 10-12. McKinley offers <u>zero support from the factual record</u> for this allegation, *see* Resp, pp. 10-12, and, in fact, this allegation is directly contrary to McKinley's own testimony! *See* Rule 56.1 Reply, ¶32 ("Q. So did you modify the arrangement with BMO so they did something different for you? A. [Mr. Maytubby] No."). For this reason alone, McKinley's "modification" argument must be rejected.

Further, even if McKinley had offered some support from the factual record for this allegation, and even if this allegation were not contradicted by McKinley's own testimony, it is a legal nullity. Paragraph 10 of the Engagement Letter is clear that "No waiver, amendment or other modification of this letter agreement shall be effective unless in writing and signed by each

party to be bound thereby." *See* Rule 56.1 Stmt, ¶10. While it is possible to orally modify a written contract, that modification must be supported by consideration to be valid. *See Sciarabba v. Chrysler Corp.*, 173 Ill. App. 3d 57, 527 N.E.2d 368 (1st Dist. 1988).

McKinley has not offered any facts showing what that consideration to BMO might have been. In fact, McKinley's description of the alleged "modification" definitively shows that, even assuming McKinley's unsupported story as true, there was no consideration. It is undisputed that BMO was aware of McKinley's pending deal with Moog when the alleged modification occurred. *See* Rule 56.1 Stmt, ¶¶48-49; Rule 56.1 Reply, ¶33. But McKinley alleges that that BMO willingly modified its contract to forfeit payment for the Moog deal in order to work on two other potential deals which would evaporate as soon as the Moog deal closed. *See id*. Not only is this story ridiculous, there is no consideration for this alleged modification, and McKinley's argument must be disregarded. *See Sciarabba*, 173 Ill. App. 3d at 64, 527 N.E.2d at 373 (holding that no oral modification of written contract occurred where there was no consideration for modification); *Fulcrum Fin. Advisors, Ltd. v. BCI Aircraft Leasing, Inc.*, 354 F.Supp.2d 817, 826 (N.D. Ill. 2005) (under similar New York law, holding that there was no oral modification of written engagement letter because such alleged modification, to accept reduced success fee, was not supported by consideration).

      c.    **BMO Did Not Waive The Written Termination Notice Requirement Under the Engagement Letter**

McKinley also argues – again, without any citation to the factual record – that McKinley somehow "waived" ¶7 of the Engagement Letter, which mandated that the Engagement Letter may be terminated only by a writing from McKinley to BMO. *See* Resp, pp. 12-13. However, ¶10 of the Engagement Letter is clear that "No waiver, amendment or other modification of this letter agreement shall be effective unless in writing and signed by each party to be bound thereby." *See* Rule 56.1 Stmt, ¶10. Such a non-waiver provision is enforceable in Illinois. *See Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 78 F.3d 266, 277 (7th Cir. 1996). While such a

provision can be waived by the conduct of a party, such waiver must be proved "by clear and convincing evidence." *Id*. Here, McKinley has plainly not met this burden, as it has put forth no evidence at all of waiver. *See* Resp, pp. 12-13. Further, it is undisputed that BMO continued to work under the Engagement Letter, did not consider the Engagement Letter terminated, and sent a bill for a Success Fee to McKinley. *See* Rule 56.1 Stmt, ¶¶43-52. This is hardly "clear and convincing evidence" that BMO relinquished its bargained-for contractual right that termination could only occur writing from McKinley. *See Roboserve, Inc*., 78 F.3d at 277 (holding non-waiver clause fully enforceable because no clear and convincing evidence of waiver presented).

### d. Even if Termination Occurred, BMO is Still Entitled to Payment Under the Contract

However, even if the alleged "termination" occured, the Engagement Letter states that "if the Company, directly or indirectly, consummates any Possible Transaction within twelve months following such termination with any party which [BMO] has identified or held substantial discussions with, then [BMO] will be entitled to the full amount of the Success Fee, as applicable, contemplated in Section 4, payable promptly upon consuumation of such Possible Transaction." *Id*., ¶7. While BMO may not have originally "identified" Moog, that clause is rendered meaningless by ¶4 of the Engagement Letter, which carves out a specific Success Fee as to Moog and three other previously identified parties, thus making it impossible for BMO to originally "identify" Moog. Under Illinois law, it is well-settled that a contractual provision must not be interpreted in a way that would nullify its provisions or render them meaningless. *See Atwood v. St. Paul Fire & Marine Ins. Co*., 363 Ill. App. 3d 861, 864, 845 N.E.2d 68, 71 (2d Dist. 2006). Therefore, ¶7 must be read to apply to Moog; to do otherwise would be to render ¶7 meaningless. *See id*.[3] Accordingly, even if McKinley can be said to have "terminated" the

---

[3] In fact, as correspondence between BMO and McKinley shows, this is why Moog and the two other parties were carved out: to prevent McKinley from claiming, after it closed a deal with one of those parties, that BMO did not do enough work to "earn" its Success Fee as called for under the Engagement Letter. *See* Rule 56.1 Reply, ¶39.

Engagement Letter (which it did not), it nonetheless owes the full amount of the Success Fee under ¶7(b) of the Engagement Letter to BMO for soliciting Moog as part of its sales process.

### e. BMO Did Not Breach the Engagement Letter

Like much of McKinley's Response, McKinley's argument that BMO somehow breached the Engagement Letter is not only irrelevant, but is not based on <u>a single citation to the factual record</u>. *See* Resp, pp. 13-15. For this reason alone, it should be disregarded. Further, McKinley's general "factual" statements are not only contradicted by the record, but are implausible to the point of absurdity, and thus insufficient to prevent summary judgment.

The upshot of McKinley's argument appears to be that McKinley asked BMO to sell McKinley in parts, BMO refused, and thus breached the Engagement Letter such that no Success Fee was due and owing upon McKinley's deal with Moog. *See* Resp, pp. 13-15. However, the factual record contradicts this story (which is based <u>solely</u> upon fragments of Mr. Maytubby's deposition testimony). In fact, the record shows that the Engagement Letter was drafted to cover a sale of parts of McKinley, as was all of the marketing material prepared by BMO with McKinley's approval. Further, BMO highlighted to McKinley at least one company that was interested in buying only a single product line. Thus, McKinley's unsupported "story" is contradicted by literally every other statement and document in the factual record.[4]

The express language of the Engagement Letter contemplates a sale of less than all of McKinley. *See* Rule 56.1 Stmt, ¶10, 13-15. Thus, under the "four corners" rule of contract interpretation, the intent of the parties – from the very beginning – was for the Engagement Letter to cover less than a full sale of McKinley. *See Air Safety, Inc.*, 185 Ill.2d at 462-63, 706 N.E.2d at 884 (intent of the parties to be determined from language within four corners of contract). Based on this fact alone, McKinley's story should be disregarded, and parol evidence

---

[4] An additional flaw in McKinley's argument is that it presumes that the Engagement Letter contains a "procuring clause," which it does not. Contrary to McKinley's belief, BMO was not required to "close the deal" in order to get a Success Fee. *See supra.*, §(B)(1)(a).

not admitted.

However, even if parol evidence were considered as to this point, the CIM specifically states that it BMO was soliciting interest for "up to 100%" of McKinley. *See* Rule 56.1 Stmt, ¶23. The CIM was drafted to highlight McKinley's individual product lines for this very reason. *See id.*, ¶25. Further, BMO cultivated Cardinal's interest in beeLINE only, and presented that interest to McKinley, which eventually met with Cardinal based on BMO's work. *See id.*, ¶¶37-39. In short, McKinley's unsupported allegation that BMO "refused" to sell McKinley's product lines is totally undercut by the facts in the record.

In addition, it is undisputed that BMO recognized from the beginning that Accufuser and beeLine were McKinley's most valuable product lines. *See* Rule 56.1 Stmt, ¶17. It is simply unreasonable to conclude that BMO would recognize the value of those product lines, solicit interest in those product lines, but then suddenly "refuse" to sell them. That is an absurd conclusion which does not jibe with the facts and cannot be squared with an inference drawn from the facts. It simply does not make sense, and, as a matter of law, does not create a "genuine issue of material fact" in light of the rest of the factual record.

## V. CONCLUSION

For the reasons stated herein and in BMO's previously-filed Memorandum of Law, summary judgment should be granted in favor of BMO and against McKinley.

Respectfully Submitted,

BMO CAPITAL MARKETS CORP.

By: /s/ Joseph P. Lombardo
One of Its Attorneys

Richard A. Wohlleber
Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000

## **CERTIFICATE OF SERVICE**

Joseph P. Lombardo, an attorney, certifies that BMO Capital Market Corp.'s Reply in Support of its Motion for Summary Judgment was filed electronically on August 31, 2007. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties and interested persons may access this filing through the Court's system:

> Daniel J. Mohan
> Daley & Mohan
> 150 N. Wacker Drive, Suite 1550
> Chicago, IL  60606
> mohan@daleymohan.com

/s/     Joseph P. Lombardo
Joseph P. Lombardo